UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

James Dale

    v.                                          Case No. 16-cv-292-SM

Michelle Goings, Warden,
Northern New Hampshire
Correctional Facility

### REPORT AND RECOMMENDATION

After a jury trial in the Merrimack County Superior Court, James Dale was convicted on one count of reckless second degree murder, in violation of N.H. Rev. Stat. Ann. ("RSA") § 630:1-b, I(b) (1996); and (2) two counts of aggravated felonious sexual assault, in violation of RSA 632-A:2, I(a) (Supp. 2000).  He is currently incarcerated in the Northern New Hampshire Correctional Facility.  Appearing pro se, Dale petitions for a writ of habeas corpus.  See 28 U.S.C. § 2254.  Before this magistrate judge for a report and recommendation is respondent's motion for summary judgment, to which Dale objects.  For the reasons that follow, respondent's motion for summary judgment should be granted.

**Background**

In the opinion in which it affirmed Dale's convictions, the New Hampshire Supreme Court ("NHSC") described the evidence established at trial this way:

> On July 3, 1997, the victim, a six-year-old girl, was found dead in the apartment she shared with her mother [Ruth Knapp], sister and her mother's boyfriend, Richard Buchanan. An autopsy revealed that she had been raped and had died from asphyxiation. The victim's mother told the police that she saw Buchanan raping and suffocating her daughter with a pillow. Buchanan was indicted for murder in September 1997. The State eventually dropped the charges after DNA testing conclusively excluded him as the source of the sperm in and on the victim's body.
>
> At the time of the murder, the defendant lived in the same apartment building as the victim. In August 1997, he left New Hampshire, and in December 1997, he was arrested in Arizona for probation violations. DNA testing showed that the defendant could not be excluded as the source of the sperm found in and on the victim's body.

State v. Dale, 146 N.H. 286, 287 (2001).

The NHSC issued its decision on Dale's appeal on April 13, 2001. In September of 2001, he filed a petition for a writ of habeas corpus in the state court, asserting several grounds for a claim that he had been denied the effective assistance of counsel, in violation of his rights under the Part I, Article 15 of the New Hampshire Constitution and the Sixth Amendment to the United States Constitution. After Dale refused to participate in the hearing on his petition by videoconference – he was then serving his New Hampshire sentence at a correctional facility in Pennsylvania – the court dismissed his petition with prejudice, in an order dated November 24, 2004.

In August of 2013, Dale filed a pro se motion for a new trial in the court that had convicted him. Subsequently, the

2

court appointed counsel to represent Dale and allowed his counsel to withdraw the motion for a new trial and replace it with: (1) a petition for a writ of habeas corpus that asserted five grounds for a claim of ineffective assistance of trial counsel; and (2) a motion to reconsider the November 2004 dismissal of the first petition for a writ of habeas corpus.  In response to an objection to the motion to reconsider and a motion to dismiss the petition, Judge McGuire ruled "that both the motion for reconsideration and the pending petition [were] untimely and barred by laches," Resp't's Mot. to Dismiss, Ex. A (doc. no. 10-6), at 22 of 32.  On that basis, she denied the motion and dismissed the petition.  Dale appealed Judge McGuire's decision to the NHSC, which declined his notice of appeal.

This petition followed.  In it, Dale claims that his trial counsel provided him with ineffective assistance, in violation of the Sixth Amendment to the U.S. Constitution, by failing to:

> call Ruth Knapp as a witness, who would have testified that she saw Buchanan commit the crime;[1]
>
> call the victim's younger sister as a witness;
>
> meaningfully challenge the DNA evidence, in that: (i) counsel withdrew a motion to exclude that evidence before trial; and (ii) counsel failed to cross-examine

---

[1] According to Dale, "[t]estimony by Ruth Knapp that she had seen Richard Buchanan raping her daughter would have greatly aided the defense in their stated theory of 'James Dale didn't do it.'"  Pet. (doc. no. 1) ¶ 33.

3

> the state's expert on issues that could undermine the impact of such evidence, relating to the methodology used, the possibility of human error, the risk of contamination, the detection limits, and bias;
>
> present a coherent defense, by failing to attack the DNA evidence adequately, and by failing to present available evidence that someone other than Dale committed the crime;
>
> meaningfully confront the medical evidence, with respect to the pathologist's opinion as to the time of death;
>
> meaningfully confront Dale's cellmate's testimony by failing to offer evidence regarding where the police found pillows, which could have impeached the cellmate's testimony;
>
> object to the use of a coin flip to select an alternate juror; and
>
> execute his duty of loyalty to his client by becoming romantically involved with the prosecutor.

R. & R. (doc. no. 12) 4-5.

## The Legal Standard

A federal court may grant habeas corpus relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Moreover, pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). But, "actual innocence, if proved, serves as a gateway through which a

4

[habeas] petitioner may pass" and bring an otherwise time-barred petition. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). In other words, "AEDPA's statute of limitations can be overcome by a showing of actual innocence." Id. at 391. That said,

> tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup [v. Delo], 513 U.S. [298,] 329 [(1995)]; see House [v. Bell], 547 U.S. [518,] 538 [(2006)] (emphasizing that the Schlup standard is "demanding" and seldom met).

Id. (parallel citations omitted); see also Schlup, 513 U.S. at 327 (explaining that "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence [which is] a stronger showing than that needed to establish prejudice [but] a lower burden of proof than the 'clear and convincing' standard").

## Discussion

In an order dated July 19, 2016, document no. 6, it was noted that in Dale's 2016 petition to this court, he was challenging a conviction and sentence imposed in 1999, and that his claim was likely barred by the habeas corpus statute of limitations, 42 U.S.C. § 2244(d)(1). Accordingly, Dale was directed to show cause why his petition was not time-barred. Dale responded:

5

> Petitioner was ordered to show cause as to why his petition should not be dismissed as barred by [the] statute of limitations: First and foremost "<u>Mr. Dale is Actually, Factually and Legally Innocent.</u>"

Pet'r's Resp. (doc. no. 7) ¶ 2 (emphasis in the original).  In addition, Dale discussed various ineffective assistance claims against the attorney who handled his first state habeas petition, <u>i.e.</u>, the one that Judge McGuire dismissed in 2004. Based upon petitioner's showing, the court directed that Dale's petition be served:

> Dale points to evidence not presented to the jury that was available prior to trial, which he contends establishes his actual innocence.  In particular, he highlights the victim's mother's statements to investigators, made shortly after the crime occurred, in which she said she saw Richard Buchanan raping the victim on the night at issue.  While it is not clear to the court that those statements, if accepted as true, exonerate Dale, this court cannot conclude from the limited portions of the state court record before it that Dale cannot state a credible claim of actual innocence based on the existence of those statements. Accordingly, the court directs service of the petition on respondent, without prejudice to the parties' ability to brief all pertinent claims and defenses, including a defense based on the statute of limitations.

Order (doc. no. 8) 4-5.

Respondent then moved to dismiss Dale's petition, arguing that: (1) the claims based on Dale's state habeas attorney's alleged ineffective assistance were not cognizable in a federal habeas petition; (2) as a result of Judge McGuire's 2004 order,

6

Dale's claims were procedurally defaulted;[2] and (3) Dale's petition was time-barred, and the limitation period was not subject to equitable tolling.  The claim arising from the performance Dale's state habeas attorney was ultimately dismissed, but as to the claim asserting ineffective assistance of trial counsel, respondent's motion to dismiss was denied. With regard to the statute-of-limitations issue, the Report and Recommendation explained, in pertinent part:

> Respondent points out that Dale has not demonstrated diligence in pursuing state post-conviction remedies [which is a requirement for equitable tolling]. Respondent does not make any argument, however, as to whether Dale's actual innocence claim – based largely on trial counsel's failure to call Ruth Knapp as a witness – is the type of credible gateway claim of actual innocence that might allow a petitioner to obtain relief upon otherwise untimely federal constitutional claims, notwithstanding his lack of diligence.

---

[2] Under the doctrine of procedural default, "a federal court [generally] 'will not review a § 2254 habeas claim when the state court's decision for that claim rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Dilboy v. Warden, N.H. State Prison, No. 13-cv-465-LM, 2015 WL 5786444, at *3 (D.N.H. Sept. 21, 2015) (quoting Powell v. Tompkins, 783 F.3d 332, 344 (1st Cir. 2015); citing Martinez v. Ryan, 566 U.S. 1, 7-11 (2012); Hodge v. Mendonsa, 739 F.3d 34, 44 (1st Cir. 2013)).  "Thus, the procedural default rule bars § 2254 habeas relief when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Dilboy, 2015 WL 5786444, at *3 (quoting Powell, 783 F.3d at 344; citing Coleman v. Thompson, 501 U.S. 722, 729-30 (1991)) (internal quotation marks omitted).

R. & R. (doc. no. 12) 5-6 (citing McQuiggin, 569 U.S. at 394-95). The Report and Recommendation also pointed out that respondent had still not produced an adequate state-court record. However, while respondent's motion to dismiss was denied, the dismissal was without prejudice to respondent arguing, at summary judgment, that Dale's ineffective assistance claim was either time-barred or procedurally defaulted.

Now we are at summary judgment, and respondent argues that she is entitled to judgment as a matter of law because: (1) Dale's petition is untimely; (2) his claim was procedurally defaulted in several different ways; (3) five of the grounds for his claim have not been exhausted;[3] and (4) his claim fails on the merits. Respondent is entitled to judgment as a matter of law because Dale's claim is time-barred.

As a preliminary matter, the court notes that respondent has produced the remainder of the state-court record, thus removing one of the obstacles to granting her motion to dismiss. That said, it is now clear that petitioner has failed to state a credible claim of actual innocence sufficient to excuse the tardy filing of his petition.

---

[3] "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

8

As noted, the court began down the actual-innocence path as a result of the following statement in petitioner's response to the July 19, 2016, show-cause order: "First and foremost, 'Mr. Dale is Actually, Factually and Legally Innocent.'" Pet'r's Resp. (doc. no. 7) ¶ 2 (emphasis omitted). And, indeed, "AEDPA's statute of limitations can be overcome by a showing of actual innocence." McQuiggin, 569 U.S. at 391. In his objection to respondent's motion for summary judgment, Dale elaborates on his assertion of actual innocence:

> Not interviewing Ruth Knapp and/or Sarah Knapp, and thereby not calling either or both of them, caused a breakdown in the adversarial process that our system counts on to produce just results. Strickland [v. Washington, 466 U.S. 668 (1984) (setting out the legal standard for claims of ineffective assistance of counsel)]. This was an inexcusable error of omission by the defense team. Given the unreliability of Cottingham's testimony, coupled with the assailing of the DNA evidence and the lack of a requirement that the jury believe the DNA evidence, the Court cannot conclude that the underlying conviction, in the absence of either or both Ruth Knapp's and/or Sarah Knapp's testimony is reliable. Absent the error, there is a reasonable probability that the jury would have had a reasonable doubt with respect to guilt, keeping in mind the legal standard for a reasonable probability, as probability sufficient to undermine confidence in the outcome.

Pet'r's Obj. (doc. no. 22) 13.[4]

---

[4] Roy Cottingham was for a time incarcerated with Dale at the New Hampshire State Prison and testified that Dale had confessed to raping and suffocating the victim.

Under McQuiggin, in order to receive relief from the § 2244(d)(1) time bar, petitioner must "persuade[] the . . . court that, in light of the new evidence [i.e., Knapp's testimony that she saw Buchanan rape and suffocate the victim] no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329). He has not done so.

In determining whether the evidence at issue meets the standard articulated in McQuiggin, the court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." Schlup, 513 U.S. at 332. At Dale's trial, the jury did not hear Ruth Knapp testify that she saw Buchanan rape and suffocate the victim or that she had told investigators that she saw Buchanan do those things, but the jury did hear Kevin McMahon, a criminalist at the New Hampshire State Police laboratory, testify that he "had information through the investigators that there was an actual eyewitness who saw Richard Buchanan rape and hold a pillow over the face of Elizabeth Knapp." Trial Tr. vol. VII, 70:12-15. Thus, much of the substance of the new evidence, i.e., the existence of an eyewitness statement implicating Buchanan, was before the jury, just not through the testimony of Ruth Knapp. Moreover, the fact that evidence of an eyewitness statement came in through a criminalist, and was offered as an explanation for

10

why Buchanan had been treated as a suspect, would seem to enhance the persuasive value of that evidence as actually presented to the jury.  Viewed in that light, the evidence that Dale criticizes his trial counsel for not introducing appears to be largely cumulative of, and less persuasive than, evidence on the same point that Dale's trial counsel did introduce.

   The jury also heard testimony that: (1) DNA testing excluded Buchanan as a possible source of the semen found in and on the body of the victim, see id. at 73:11-74:17, 189:22-23; 207:15-18; (2) DNA testing did not exclude Dale as a possible source of that semen, see id. at 188:13-189:13; and (3) the genetic characteristics of that semen are found in "about one in every three million Caucasians," id. at 205-06, including Dale but not Buchanan.

   Because the jury did hear testimony that an eyewitness had seen Buchanan rape and suffocate the victim, and testimony that Buchanan had been excluded as a possible source of the semen recovered from the victim's body, petitioner has failed to persuade the court that if Ruth Knapp had testified about seeing Buchanan assault the victim, no reasonable juror would have voted to find him, i.e., Dale, guilty beyond a reasonable doubt. Thus, petitioner has not made a credible claim of actual innocence sufficient to excuse his failure to file his petition within the time limit established by 28 U.S.C. § 2244(d)(1).

11

Accordingly, respondent is entitled to judgment as a matter of law.

## Conclusion

For the reasons described above, respondent's motion for summary judgment, document no. 19, should be granted.

Moreover, because Dale has not "made a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), I recommend that the court decline to issue a certificate of appealability. Should the court follow my recommendation, Dale may, however, seek such a certificate from the court of appeals under Federal Rule of Appellate Procedure 22(b). See Rule 11, Federal Rules Governing Section 2254 Cases (2010); 18 U.S.C. § 2253(c).

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

February 5, 2018

cc: James Dale, pro se
 Elizabeth C. Woodcock, Esq.